UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARLIN DEVON HOLLAND,

            Petitioner,                    Case Number: 2:08-CV-13558

v.                                       Honorable Patrick J. Duggan

HUGH WOLFENBARGER,

            Respondent.

_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING CERTIFICATE OF APPEALABILITY

Petitioner Marlin Devon Holland filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner is presently in the custody of the Michigan Department of Corrections pursuant to convictions in 2002 for armed robbery, assault with intent to murder, felon in possession of a firearm, and possession of a firearm during the commission of a felony. Petitioner seeks habeas relief contending that he received ineffective assistance of trial and appellate counsel, hearsay testimony was improperly admitted, the trial court improperly excluded a composite sketch made at the complainant's direction, his sentence was based on facts not found by a jury, and a photographic line-up was improperly suggestive. The Court finds that Petitioner's claims lack merit. The Court, therefore, denies the petition.

## I.  Factual Background

Petitioner's convictions arise from a robbery and shooting of a cashier at a Mobil

gas station in Dearborn Heights, Michigan, on July 17, 2002. Abdul Al-Shawi testified

that he was working alone at the gas station on the night of the robbery. He was standing

behind the counter when a man he identified as Petitioner entered the station. He

described the man as wearing a pink t-shirt and jeans and having a mustache. Petitioner

paid Al-Shawi for a package of cigarettes and, when Al-Shawi attempted to give

Petitioner his change, Petitioner pulled out a silver automatic handgun and pointed it at

Al-Shawi's chest. Petitioner warned Al-Shawi not to move, and told him to give

Petitioner all his money or he would be killed. Al-Shawi gave Petitioner the money from

the cash drawer. Petitioner took the money and then shot Al-Shawi three times in the

neck.

Robert Gonzales testified that he entered the mobile gas station at approximately

8:30 p.m. on the day of the robbery. He purchased a drink and then left the gas station.

As Gonzalez was leaving, he saw someone drive a vehicle onto the premises and park

toward the rear of the gas station. He described the driver of the vehicle as having a

mustache and some facial hair, perhaps a goatee. He identified Petitioner as the

individual he saw drive up to the station. Three or four minutes after Gonzalez walked

away from the gas station, he saw Petitioner drive by at a high rate of speed.

On August 7, 2002, the Dearborn Heights Police presented Gonzales and Al-Shawi

with a photo array containing six photographs, including a photograph of Petitioner. In

the photograph, Petitioner had a full beard. Gonzales and Al-Shawi both identified

Petitioner as the individual they saw at the Mobil station on July 17. On August 7, the

police also executed a search warrant at Petitioner's home. They found, among other things, a box of .25 caliber Winchester ammunition, which was missing ten bullets. The spent shell casings recovered from the gas station were also .25 caliber.

## II. Procedural History

Following a jury trial in the Wayne County Circuit Court, Petitioner was convicted of armed robbery, assault with intent to murder, felon in possession, and felony firearm. The trial court sentenced Petitioner to the following terms of imprisonment: 75 to 125 years for the armed robbery and assault convictions, 2 to 5 years for the felon-in-possession conviction, and 10 years for the felony-firearm conviction. Petitioner filed an appeal of right in the Michigan Court of Appeals raising the following claims through counsel:

I.    Defendant-appellant's convictions should be reversed because the trial court abused its discretion in admission of subsequent acts evidence under M.R.E. 404(b).

II.   Defendant-appellant's convictions should be reversed because the trial court improperly denied admission of a composite drawing of the alleged perpetrator.

Petitioner filed a pro se brief raising the following additional claim:

I.    The trial court erred, and deprived defendant Holland of his liberty without due process of law, where the court failed to suppress identification testimony which was established under circumstances where defendant Holland was denied his constitutional right to counsel at a precustodial, investigatory lineup, in which he was the primary focus of the investigation of the crimes charged.

The Michigan Court of Appeals affirmed Petitioner's convictions. *People v.*

*Holland*, No. 247038, 2004 WL 1977633 (Mich. Ct. App. Sept. 7, 2004). Petitioner filed

a motion for reconsideration which the court of appeals also denied. *People v. Holland*,

No. 247038 (Mich. Ct. App. Oct. 18, 2004). Petitioner filed an application for leave to

appeal in the Michigan Supreme Court, raising the same claims raised in the state court of

appeals, which the Supreme Court denied on July 28, 2005. *People v. Holland*, 472

Mich. 938, 698 N.W.2d 395 (2005).

Petitioner thereafter filed a motion for relief from judgment in the trial court,

arguing that counsel was ineffective in failing to: (i) present an opening statement; (ii)

object to prosecutorial misconduct; (iii) present expert testimony of a sketch artist; and

(iv) move to suppress pre-trial identification as unduly suggestive. The trial court denied

the motion on June 27, 2006. *People v. Holland*, No. 02-010683 (Wayne County Cir. Ct.

June 27, 2006). After the motion was denied, Petitioner filed a motion to amend the

motion to include the following claims: (i) counsel was ineffective in failing to present

the best defense, including alibi witnesses; (ii) trial court used facts during sentencing

which were not found by a reasonable doubt by the jury; and (iii) the photo line-up was

unduly suggestive. The trial court denied the supplemental motion for relief from

judgment on August 2, 2006. *People v. Holland*, No. 02-010683 (Wayne County Cir. Ct.

Aug. 2, 2006).

Petitioner filed an application for leave to appeal the denial of his first and

supplemental motions for relief from judgment in the Michigan Court of Appeals. The

Michigan Court of Appeals dismissed the appeal from the denial of the supplemental

motion because the order appealed from denied a successive motion for relief from judgment and such an appeal is not allowed under Michigan Court Rules. *People v. Holland*, No. 275108 (Mich. Ct. App. Feb. 22, 2007). The court of appeals denied leave to appeal from the denial of the original motion for relief from judgment "for failure to meet the burden of establishing entitlement to relief under M.C.R. 6.508(D)." *People v. Holland*, No. 275108 (Mich. Ct. App. Oct. 23, 2007).

Petitioner filed an application for leave to appeal in the Michigan Supreme Court, raising the same claims raised in the Michigan Court of Appeals. On May 27, 2008, the Michigan Supreme Court denied leave to appeal because Petitioner "failed to meet the burden of establishing entitlement to relief under M.C.R. 6.508(D)." *People v. Holland*, 481 Mich. 876, 741 N.W.2d 808 (2008).

On August 18, 2008, Petitioner filed the pending petition for a writ of habeas corpus. In the Petition, he raises the following claims:

I.      Do defendant Holland's references to the record and supporting facts demonstrate that the failure of his appellate counsel, as set forth below, to raise the issues presented in his Rule 6.500 motion constitute ineffective assistance of counsel and satisf[y] the requirement that he show "cause" and "prejudice" under Rule 6.508(D)(a)?

II.     Was defendant Holland deprived of his liberty without due process of law by the admission of third-party hearsay testimony designed to bolster the credibility of the complainant's identification testimony?

III.    Was defendant denied the effective assistance of counsel as guaranteed by the Sixth and Fourteenth Amendments where counsel (A) failed to object to prejudicial prosecutor misconduct; (B) failed to make offer of proof for presentation of expert testimony; and (C) failed to press motion to suppress identification testimony of the

complainant.

IV.    Was defendant Holland deprived of his liberty without due process of law, his right to a fair trial, and his right to present a defense as guaranteed by the Sixth and Fourteenth Amendments, where the trial court refused to admit evidence of a composite drawing made by a police expert sketch artist at the complainant's direction?

V.    Was defendant denied effective assistance of counsel and a fair trial, contrary to the Sixth Amendment of the United States Constitution, when defense counsel did not present defendant's best defense to the charge?

VI.    Is defendant's sentence constitutionally infirm because facts were considered, through the sentencing guidelines, that the jury . . . had not found, as a result he is entitled to re-sentencing?

VII.    Was defendant denied due process of law and a fair trial because of the unduly and impermissible suggestiveness of the photographic line-up where defendant was the only person depicted with a shaved head and full beard, identical to the photograph aired of him during a T.V. broadcast, and there was no independent basis for the identification?

### III.  Standard of Review

This case is governed by the Antiterrorism and Effective Death Penalty Act of

1996 ("AEDPA").  Pursuant to the AEDPA, Petitioner is entitled to a writ of habeas

corpus only if he can show that the state court's adjudication of his claim-

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  Simply stated, under § 2254(d), Petitioner must show that the state

court's decision "was either contrary to, or an unreasonable application of, [the Supreme] Court's clearly established precedents, or was based upon an unreasonable determination of the facts." *Price v. Vincent*, 538 U.S. 634, 639, 123 S.Ct. 1848, 1852-53 (2003).

A state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13, 120 S.Ct. 1495, 1523 (2000). A state court's decision is an "unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*

"[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409, 120 S.Ct. at 1521. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411, 120 S.Ct. at 1522. "Rather, it is the habeas applicant's burden to show that the state court applied [Supreme Court precedent] to the facts of his case in an objectively unreasonable manner." *Woodford v. Visciotti*, 537 U.S. 19, 25, 123 S.Ct. 357, 360 (2002).

## IV. Applicable Law and Analysis

## A. Alleged Procedural Default

Respondent argues that all but one of Petitioner's claims are procedurally defaulted. "[F]ederal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525, 117 S. Ct. 1517, 1523 (1997)). "Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law." *Lambrix*, 520 U.S. at 525, 117 S. Ct. at 1523. In this case, the Court finds that the interests of judicial economy are best served by addressing the merits of Petitioner's allegedly defaulted claims without evaluating the procedural default issue.

## B. Hearsay Testimony

Petitioner argues that his rights under the Michigan Rules of Evidence and the Sixth Amendment's Confrontation Clause were violated by the admission of hearsay through the testimony of police detective Gary Tomkiewicz. Detective Tomkiewicz testified that he showed a photographic array to two people, Al-Shawi and Gonzales, and that both individuals selected Petitioner's photograph from the array as the individual who was at the Mobil gas station at the time of the robbery on July 17, 2002. Petitioner argues that Detective Tomkiewicz's testimony as to which photograph was selected was impermissible hearsay.

It is "not the province of a federal habeas court to reexamine state-court

determinations on state-court questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68, 112 S.Ct. 475 (1991). A federal court is limited in federal habeas review to deciding whether a state court conviction violates the Constitution, laws, or treaties of the United States. *Id.* "Errors in the application of state law, especially rulings regarding the admission or exclusion of evidence, are usually not to be questioned in a federal habeas corpus proceeding." *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir.2000). Thus, a claim that the state court violated Michigan Rule of Evidence 801(d) is not cognizable on federal habeas review.

The Confrontation Clause of the Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. "The Sixth Amendment's right of an accused to confront the witnesses against him is . . . a fundamental right and is made obligatory on the States by the Fourteenth Amendment." *Pointer v. Texas*, 380 U.S. 400, 403, 85 S. Ct. 1065, 1067-68 (1965). The rights of confrontation and cross-examination "have ancient roots" which the "Court has been zealous to protect . . . from erosion." *Id.*, at 404-05, 85 S. Ct. at 1068 (internal quotation omitted). The right to a trial by jury is predicated upon the belief "'that the 'evidence developed' against a defendant shall come from the witness stand in a public courtroom where there is full judicial protection of the defendant's right of confrontation, of cross examination, and of counsel.'" *Id.* at 405, 85 S. Ct. at 1069, (quoting *Turner v. Louisiana*, 379 U.S. 466, 472-73, 85 S. Ct. 546 (1965).

In *Crawford v. Washington*, 541 U.S. 36, 68, 124 S. Ct. 1354 (2004), the Supreme

Court held that out-of-court statements that are testimonial in nature are barred by the Confrontation Clause unless the witness is unavailable and the defendant had a prior opportunity for cross-examination, regardless of whether the trial court finds the statements to be reliable. In this case, both identification witnesses testified at trial. "[N]one of [the Supreme Court's] decisions interpreting the Confrontation Clause requires excluding the out-of-court statements of a witness who is available and testifying at trial." *California v. Green*, 399 U.S. 149, 161, 90 S. Ct. 1930, 1936-37 (1970). On the contrary, "where the declarant is not absent, but is present to testify and submit to cross-examination, our cases, if anything, support the conclusion that the admission of [the witness'] out-of-court statements does not create a confrontation problem." *Id.* at 162, 90 S. Ct. at 1937. This rule survives *Crawford*. *Crawford*, 541 U.S. at 59 n.9, 124 S. Ct. at 1369 n.9. Accordingly, the Court concludes that Petitioner is not entitled to habeas relief based on his hearsay claim.

### C.  Alleged Ineffective Assistance of Counsel
### and Admission of Identification Testimony

Petitioner argues that habeas relief is warranted because his trial attorney was ineffective.  Specifically, Petitioner argues that counsel was ineffective in failing to (i) object to prosecutorial misconduct; (ii) make an offer of proof for presentation of expert testimony; (iii) press a motion to suppress identification testimony; and (iv) present the "best defense to the charge."

In *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984), the Supreme Court established a two-pronged test for determining whether a habeas petitioner has received ineffective assistance of counsel.  First, a petitioner must prove that counsel's performance was deficient.  This "requires a showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* at 687, 104 S. Ct. at 2064.  Second, a petitioner must show that counsel's deficient performance prejudiced the petitioner.  To satisfy the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S. Ct. at 2064.  A court's review of counsel's performance must be "highly deferential." *Id.* at 689, 104 S. Ct. at 2065.

First, Petitioner argues that his trial counsel was ineffective in failing to object to the prosecutor's denigration of defense counsel during closing arguments.  Petitioner

claims that the prosecutor's arguments tended to mislead the jury and invited the jury to consider improper evidence in their deliberations. The Court has reviewed the closing arguments and finds that the prosecutor's comments were not improper. The prosecutor attacked defense's theories, not defense counsel. The prosecutor argued that the evidence did not support acquittal as argued by defense counsel because, contrary to defense counsel's argument, the identification testimony was accurate, consistent, and reliable. All of the prosecutor's arguments were based upon reasonable inferences that could be made from the evidence presented. Therefore, defense counsel was not ineffective in failing to object.

Second, Petitioner argues that his trial counsel was ineffective in his attempt to introduce into evidence the composite sketch drawing prepared according to Al-Shawi's description of the shooter. Petitioner argues that, because the composite sketch bears very little resemblance to Petitioner, the jury would have been persuaded that he was not the shooter. The trial court excluded the sketch holding that it would be more confusing than beneficial to the jury. The Michigan Court of Appeals upheld the trial court's decision, noting that the evidence was properly excluded under Michigan Rule of Evidence 403 because the probative value was substantially outweighed by the danger of confusing the issues and misleading the jury. *Holland*, 2004 WL 1977633, at **3-4. The Michigan Court of Appeals found "a 'reasonable likelihood that the jury would fail to understand the demonstrative nature of the [composite sketch] due to Petitioner's failure to secure the composite sketch artist as a witness to explain "the difference between a

composite drawing and an accurate portrait of the perpetrator." *Id*. at *4. In support of his habeas petition, Petitioner therefore argues that his counsel was ineffective in failing to secure a sketch artist as a witness.

Although the Supreme Court in *Strickland* discussed the performance prong of an ineffectiveness claim before the prejudice prong, the Court made clear that "there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one." Strickland, 466 U.S. at 697, 104 S. Ct. at 2069. The Court instructed that "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Id.*, 104 S. Ct. at 2069. In this case, Petitioner has not shown that the exclusion of the composite sketch caused him prejudice. Defense counsel cross-examined Al-Shawi about discrepancies between the descriptions he gave of the perpetrator a week after the shooting when the sketch artist was present and Petitioner's actual appearance. Admission of the composite sketch may have illustrated those discrepancies; but given the effective cross-examination of Al-Shawi on this issue, the Court finds there is no reasonable likelihood that the result of the proceeding would have been different had the sketch been admitted.[1]

_____

[1]The Court also notes that the record is devoid of evidence regarding what description Al-Shawi provided to the sketch artist. As a result, it is not possible to determine whether Al-Shawi's description of the perpetrator did not match Petitioner or whether the sketch artist's rendering of the perpetrator based on his description simply failed to accurately portray Petitioner.

Moreover, despite these discrepancies and whether the artist's sketch resembles Petitioner, Al-Shawi immediately recognized Petitioner as the perpetrator when he saw Petitioner's picture on television on August 5, 2002 and when he was shown a picture of Petitioner in a photograph array on August 7, 2002. (*See* 12/5/02 Tr. at 50-51.) Al-Shawi was firm that Petitioner's face– rather than the length of his hair and the presence of a full mustache or goatee– was what made him "a hundred percent" sure that Petitioner was the perpetrator of the robbery. (*See id*. at 51.) Furthermore, while Al-Shawi only had a "short time" to observe Petitioner on the day of the robbery, Al-Shawi testified that he recognized Petitioner because he had been to the gas station more than one time before the shooting.

Petitioner also argues that his trial counsel was ineffective in failing to press for the suppression of Al-Shawi's identification testimony and, in his seventh claim for habeas relief, that the identification testimony was improperly admitted. Defense counsel filed a pretrial motion to suppress the identification testimony of Gonzalez and Al-Shawi on the ground that the pretrial identification procedure was unduly suggestive. The trial court conducted a *Wade* hearing and denied the motion.[2] Defense counsel failed to call Al-Shawi to testify at the *Wade* hearing. Petitioner argues that counsel therefore constructively abandoned his motion to suppress Al-Shawi's identification testimony.

"A conviction based on identification testimony that follows a pretrial

---

[2]*See United States v. Wade*, 388 U.S. 218, 87 S. Ct. 1926 (1967).

identification violates the defendant's constitutional right to due process whenever the pretrial identification is so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Ledbetter v. Edwards*, 35 F.3d 1062, 1070 (6th Cir. 1994). A court must undertake a two-step analysis to determine the validity of a pretrial identification. First, the court must determine whether the procedure was unduly suggestive. If the court finds that the procedure was unduly suggestive, the court must then "evaluate the totality of the circumstances to determine whether the identification was nevertheless reliable." *Id.* The petitioner bears the burden of showing impermissible suggestiveness. *Howard v. Bouchard*, 405 F.3d 459, 469 (6th Cir. 2005).

Petitioner argues that, had counsel called Al-Shawi to testify at the *Wade* hearing, it would have been shown that the photographic array was impermissibly suggestive rendering the in-court identification unreliable. He further argues that the identification was unreliable because the victim lacked adequate time to observe the shooter and could not effectively have mentally recorded the shooter's physical appearance because of the trauma of the event.

The Michigan Court of Appeals addressed the suppression of identification testimony as it related to Gonzalez. The same photo array was shown to Al-Shawi and Gonzalez. A photographic array is impermissibly suggestive if "the picture of the accused, matching descriptions given by the witness, so stands out from all of the other photographs as to suggest to an identifying witness that that person was more likely to be the culprit." *United States v. Thai*, 29 F.3d 785, 808 (2d Cir. 1994); *see also Schawitsch*

15

*v. Burt*, 491 F.3d 798, 803 (8th Cir. 2007) ("Reasonable variations in hair length and facial hair are not impermissibly suggestive, especially as they can vary on any given person at different times."); *Jarrett v. Headley*, 802 F.2d 34, 41 (2d Cir. 1986) ("It is not required that all of the photographs in the array be uniform with respect to a given characteristic.").

The Michigan Court of Appeals held that the photo array in Petitioner's case was not impermissibly suggestive, reasoning, in relevant part:

> [T]he record indicates that the array was produced using defendant's photograph from the Sunoco surveillance camera in which he appeared to have a shaved head and full beard. The photo array contained six color, head-and-neck photographs, with equivalent backgrounds, of African-American males, each with short haircuts and some form of facial hair, although defendant was the only individual with a full beard and shaved head. Because the other individuals had short haircuts and facial hair, and defendant's photograph had no other distinguishing external characteristics that would cause the witness to select him from the others in the array, we conclude that the composition of the photographic lineup itself did not render it impermissibly suggestive.

*Holland*, 2004 WL 1977633, at *6. In habeas proceedings, a state court's factual findings are entitled to a presumption of correctness which the petitioner bears the burden of overcoming by "clear and convincing" evidence. *See* 28 U.S.C. § 2254(e)(1). The photographs in the array attached to the petition do not overcome the presumption of correctness afforded the state court's factual findings regarding the similarity of the participants in the array. (*See* Doc. 7-11 at 64.)

The participants in the photo array appear reasonably similar to one another. While the only person pictured in the photo array with a shaved head is Petitioner (the

remaining participants have very short hair), Gonzalez testified that he was not able to tell whether the person he saw at the Mobile gas station on July 17 had hair on the top of his head (11/15/02 Tr. at 8) and Al-Shawi testified that the robber had "really short hair" (12/5/02 Tr. at 53). Thus, the state court's analysis rejecting Petitioner's challenge to the suggestiveness of the photo array was not erroneous nor was it an unreasonable application of clearly established Supreme Court precedent.

Even if the photo array was unduly suggestive, "'the central question' becomes 'whether under the 'totality of the circumstances' the identification was reliable even though the confrontation procedure was suggestive.'" *United States v. Pickett*, 278 Fed. App'x 465, 467-68 (6th Cir. 2008) (quoting *Neil v. Biggers*, 409 U.S. 188, 199, 93 S. Ct. 375 (1972)). "'[I]f an identification is reliable, it will be admissible even if the confrontation procedure was suggestive.'" *Id*. at 468 (quoting *Keene v. Mitchell*, 525 F.3d 461, 465 (6th Cir. 2008) (quoting *Carter v. Bell*, 218 F.3d 581, 605 (6th Cir. 2000)).

A court must evaluate the totality of the circumstances to assess the reliability of a witness identification, including the following factors:

> ". . . the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation."

*Id*. (quoting *Biggers*, 409 U.S. at 199-200, 93 S. Ct. at 382). The ultimate question is whether "under all the circumstances of th[e] case there is a very substantial likelihood of irreparable misidentification." *Manson v. Brathwaite*, 432 U.S. 98, 97 S. Ct. 2243 (1977)

(internal quotation marks and citation omitted). "Short of that point, such evidence is for the jury to weigh." *Id.*

In this case, Al-Shawi testified that he saw Petitioner at the Mobil station more than one time before the day of the shooting, was able to see the perpetrator as soon as he entered the gas station booth, observed the perpetrator for one to two minutes during the robbery, and was one hundred percent positive that Petitioner was the shooter. Al-Shawi was close to the perpetrator during the robbery. Finally, only a few weeks passed between the time of the robbery (July 17) and Al-Shawi's identification of Petitioner as the perpetrator from the photo array (August 7).

Petitioner argues that the trauma of the event precluded Al-Shawi from effectively recording the perpetrator's physical appearance. However, finding a robbery victim's identification reliable, the Sixth Circuit Court of Appeals has reasoned that it is "more likely to find an identification reliable where a witness 'was able to view the assailant with a heightened degree of attention, as compared with disinterested bystanders or casual observers.'" *Pickett*, 278 Fed. App'x at 469 (quoting *Haliym v. Mitchell*, 492 F.3d 680, 705 (6th Cir. 2007); *see also United States v. Crozier*, 259 F.3d 503, 511 (6th Cir. 2005) (finding heightened degree of attention where the robber confronted the witnesses with a gun). Here, as Petitioner accurately conveys in his habeas petition, Al-Shawi testified that the perpetrator pointed a gun at his heart and demanded money from the register. As Sixth Circuit precedent indicates, under these conditions, Al-Shawi was likely to pay close attention to the person robbing him.

Petitioner also argues that Al-Shawi's and Gonzalez' identifications were rendered unreliable because both witnesses saw Petitioner's picture on a television broadcast following the robbery of a Fast Track Station on August 5, 2002, and before they identified Petitioner from the photo array on August 7, 2002. In *Pickett*, however, the Sixth Circuit addressed the reliability of identifications made by bank robbery victims after they viewed a wanted poster relating to the robberies that included the defendant's picture. The *Pickett* court concluded that the victims' viewing of the wanted poster "do[es] not create the type of circumstance that indicates a "very substantial likelihood of irreparable misidentification." 278 Fed. App'x at 469.

In that case, one of the victims had observed the wanted poster outside the bank fraud investigator's office while she waited to discuss the upcoming police lineup. *Id.* at 466. Another victim worked at a branch of the bank where the poster was posted for two months and thus she saw the suspect's photograph multiple times a day before subsequently identifying the defendant as the perpetrator at a police-conducted lineup. *Id.* Similarly, Al-Shawi's and Gonzalez' exposure to the television broadcast before they selected Petitioner's picture from the photo array "d[id] not create the type of circumstance that indicates a 'very substantial likelihood of irreparable misidentification.'" *See supra*.

For the above reasons, the Court finds that the photo array was not unduly suggestive. Even if it was, however, the Court further finds that Al-Shawi's identification was not unreliable under the facts presented. Consequently, the trial court did not err in

admitting Al-Shawi's identification testimony and Petitioner's counsel was not

ineffective for failing to object to its admission.[3]

Finally, Petitioner argues that his trial attorney was ineffective in failing to present

his "best defense to the charge."  He argues that defense counsel should have presented an

alibi defense and should have more adequately explored the discrepancies between the

physical descriptions given of the perpetrator and Petitioner's appearance.  Petitioner

states that counsel knew of two witnesses, Annette Watts and Jessie Young, whose

testimony "would infer" that Petitioner was at another location at the time of the crime.

(Pet. at 36.)  He further states that there were at least fifteen witnesses who would have

testified that Petitioner had a shaved head and full beard when he reported to work on

July 17, 2002, which would have contradicted Al-Shawi's and Gonzalez' description of

the perpetrator.  (*Id*. at 39.)

The record shows that defense counsel called both Watts and Young to testify for

the defense.  Watts testified that she was the human resources director at the company

where Petitioner was employed at the time of the crimes.  (12/9/02 Tr. at 7.)  Watts

further testified that Petitioner arrived at work at 11:17 p.m. on July 17, 2002, and worked

---

[3]To the extent Petitioner also is challenging the admissibility of Gonzalez' in-court identification, the Court finds that he cannot establish that the Michigan Court of Appeals' analysis was contrary to or an unreasonable application of federal law or was based on an unreasonable determination of the facts in light of the evidence presented.  For the reasons set forth above, there is nothing indicating that the identification procedure was suggestive; and for the reasons set forth above and by the Michigan Court of Appeals, the totality of the circumstances indicate that Gonzalez' identification was reliable.  *See Holland*, 2004 WL 1977633, at *6.

until 8:06 a.m. on July 18, 2002.  (*Id*.)  Young testified that he was a shift supervisor and was working on July 17, 2002.  (*Id*. at 9.)  He testified that Petitioner had worked under his supervision for four months and that Petitioner always reported to work with a clean-shaven head and a full beard.  (*Id*. at 10.)

Thus, contrary to Petitioner's argument, counsel did elicit testimony from two witnesses regarding his attendance and appearance at work on the relevant day.  That testimony revealed that Petitioner in fact was not working at around 8:30 p.m. on July 17, 2002, when the robbery at the Mobil station occurred.  The testimony further indicated that Petitioner wore a full beard during the approximately four months that he worked for this employer.  Petitioner fails to identify with specificity any other witness who would have provided favorable testimony on the issue of his appearance on the date in question.  Additionally, Petitioner's trial counsel cross-examined Al-Shawi and Gonzalez regarding discrepancies between their descriptions of the perpetrator and Petitioner's actual appearance.

For the above reasons, the Court concludes that Petitioner fails to demonstrate prejudice to his defense arising from his trial counsel's alleged deficiencies with respect to the identification of Petitioner as the perpetrator of the robbery.  Habeas relief therefore is not warranted based on this asserted ground for relief.

### D.  Exclusion of the Composite Sketch

Petitioner argues that he was denied his right to present a defense when the trial court declined to admit into evidence the composite sketch based on Al-Shawi's

description of the perpetrator.  Petitioner argues that the composite sketch did not resemble him and its admission, consequently, would call into question the accuracy of Al-Shawi's subsequent identification of Petitioner from a photographic array.

The right of a defendant to present a defense has long been recognized as "a fundamental element of due process of law."  *Washington v. State*, 388 U.S. 14, 19, 87 S. Ct. 1920, 1923 (1967).  It is one of the "minimum essentials of a fair trial."  *Chambers v. Mississippi*, 410 U.S. 284, 294, 93 S. Ct. 1038, 1045 (1973).  The Supreme Court has described the "most basic ingredients of due process of law" as follows:

> "A person's right to reasonable notice of a charge against him, and an opportunity to be heard in his defense– a right to his day in court– are basic in our system of jurisprudence; and these rights include, as a minimum, a right to examine the witnesses against him, to offer testimony, and to be represented by counsel."

> The right to offer testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies.  Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense.  This right is a fundamental element of due process of law.

*Washington v. Texas*, 388 U.S. 14, 18-19, 87 S. Ct. 1920, 1923 (1967) (quoting *In re Oliver*, 333 U.S. 257, 68 S. Ct. 499 (1948)).

This Court recognizes that, while the right to present a defense is a fundamental tenet of due process, "a defendant's right to present evidence is not unlimited, but rather is subject to reasonable restrictions."  *United States v. Scheffer*, 523 U.S. 303, 308, 118 S. Ct. 1261, 1264 (1998).  Indeed, "[a] defendant's interest in presenting . . . evidence may

thus bow to accommodate other legitimate interests in the criminal trial process." *Id.* (internal quotations omitted). However, the exclusion of evidence is unconstitutional where it "infringe[s] upon a weighty interest of the accused." *Id.* (citing *Rock v. Arkansas*, 483 U.S. 44, 58, 107 S. Ct. 2704, 2712-13 (1987)); *see also Chambers v. Mississippi*, 410 U.S. 283, 302, 93 S. Ct. 1038, 1045-46 (1973); *Washington v. Texas*, 388 U.S. 14, 22-23, 87 S. Ct. 1920, 1924-25 (1967). Because criminal defendants are guaranteed a "meaningful opportunity to present a complete defense," courts cannot exclude defense evidence under evidentiary rules that "serve no legitimate purpose or that are disproportionate to the ends that they are asserted to promote." *Holmes v. South Carolina*, 547 U.S. 319, 325-26, 126 S. Ct. 1727, 1732 (2006).

In determining whether the exclusion of evidence infringes upon a weighty interest of the accused, the court's role is not to determine whether the excluded evidence would have caused the jury to reach a different result. *See Davis v. Alaska*, 415 U.S. 308, 317, 94 S. Ct. 1105, 1111 (1973). Instead, the question is whether the defendant was afforded "'a meaningful opportunity to present a complete defense.'" *Crane v. Kentucky*, 476 U.S. 683, 690, 106 S. Ct. 2142, 2146 (1986) (quoting *California v. Trombetta*, 467 U.S. 479, 485, 104 S. Ct. 2528, 2532 (1984)). The prosecutor's case must "encounter and 'survive the crucible of meaningful adversarial testing.'" *Id.* at 690-691, 106 S. Ct. at 2147 (1984) (quoting *United States v. Cronic*, 466 U.S. 648, 656, 104 S. Ct. 2039, 2045 (1984)). But, the Supreme Court has emphasized that "the Due Process Clause does not permit the federal courts to engage in a finely tuned review of the wisdom of state evidentiary rules."

*Marshall v. Lonberger*, 459 U.S. 422, 438 n. 6, 103 S. Ct. 843, 853 (1983).

In this case, the Michigan Court of Appeals held that the trial court did not abuse

its discretion in excluding the composite sketch, reasoning, in pertinent part:

> The trial court did not abuse its discretion by excluding demonstrative
> evidence in the form of a composite drawing, discerning that such evidence
> would be confusing and unbeneficial to the jury so as to substantially
> outweigh its probative value because the jury's potential inability to
> distinguish such evidence as purely demonstrative was reasonably likely.
>
> Defendant argues for the admissibility of the composite drawing on the
> basis that the drawing demonstrates fundamental characteristics that differ
> from defendant's physical appearance as identified by the victim and does
> not itself constitute photographic representation. The trial court denied the
> presentation of the drawing to the jury primarily because defendant could
> not produce additional testimony that would have explained the difference
> between a composite drawing and a photograph to the jury. The trial court
> therefore found that the probative value of the drawing substantially
> outweighed by the danger of confusing the issues or misleading the jury.
> M.R.E. 403.
>
> Although the demonstrative evidence of the composite drawing was
> relevant to the material issue of identity at trial, and thereby admissible
> under MRE 402, demonstrative evidence does not escape scrutiny under
> M.R.E. 403. . . .

*Holland*, 2004 WL 1977633, at *4.

The trial court's decision to exclude the composite sketch from evidence was a

reasonable restriction on the right to present a defense. The trial court was concerned that

the admission of the sketch would confuse the jury. The discrepancies between Al-

Shawi's initial description of his assailant and the photograph of Petitioner that he

selected from a photo array was exhaustively and adequately explored. Additionally, the

discrepancies between Al-Shawi's initial description of the perpetrator and Petitioner's

actual appearance were extensively examined at trial.

Moreover, even if exclusion of evidence was erroneous under state law, the constitutional right to present a defense is not abridged unless the evidence was so material that it deprived the defendant of a fair trial. *Allen v. Howes*, 599 F. Supp. 2d 857, 872 (E.D. Mich. 2009). Assuming that the trial court erred in excluding this testimony, the Court must determine whether the error was harmless. The test for whether an error is harmless is whether it had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 623, 113 S. Ct. 1710, 1714 (1993). When a federal habeas court is in "grave doubt" about whether a trial error of federal constitutional law had a substantial and injurious effect or influence in determining the jury's verdict, the error is not harmless and the petitioner must prevail. *O'Neal v. McAninch*, 513 U.S. 432, 436, 115 S. Ct. 992, 999 (1995).

In this case, exclusion of the composite sketch did not deprive Petitioner of a fair trial. Petitioner sought to introduce the composite sketch as demonstrative evidence that Al-Shawi's initial description of the perpetrator was not consistent with Petitioner's actual appearance. As discussed, although the jury was not able to view the composite sketch, defense counsel's cross-examination of Al-Shawi adequately explored and conveyed to the jury inconsistencies between Al-Shawi's initial description of the shooter and Al-Shawi's actual physical appearance.

For these reasons, the Court concludes that the trial court's evidentiary ruling regarding the composite sketch did not violate Petitioner's constitutional right to present a

defense.  Habeas relief is denied based on this ground.

## E.  Alleged Improper Sentence

Petitioner argues that habeas relief is warranted because his sentence was improperly based upon facts not admitted by him or determined by the jury.

In *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348 (2000)*,* the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id*. at 490, 120 S. Ct. at 2362-63.  Michigan has an indeterminate sentencing system for most crimes, including those for which Petitioner is imprisoned.  The maximum term of imprisonment is set by law.  *People v. Drohan*, 475 Mich. 140, 160-61, 715 N.W.2d 778, 789 (2006).

In *Blakely v. Washington*, 543 U.S. 296, 124 S. Ct. 2531 (2004), the Supreme Court addressed indeterminate sentencing systems and held that such systems do not violate the Sixth Amendment.  The Court explained:

> [The Sixth Amendment] limits judicial power only to the extent that the claimed judicial power infringes on the province of the jury.  Indeterminate sentencing does not do so.  It increases judicial discretion, to be sure, but not at the expense of the jury's traditional function of finding the facts essential to lawful imposition of the penalty.  Of course indeterminate schemes involve judicial factfinding, in that a judge (like a parole board) may implicitly rule on those facts he deems important to the exercise of his sentencing discretion.  But the facts do not pertain to whether the defendant has a legal right to a lesser sentence-and that makes all the difference insofar as judicial impingement upon the traditional role of the jury is concerned.  In a system that says the judge may punish burglary with 10 to 40 years, every burglar knows he is risking 40 years in jail.  In a system that punishes burglary with a 10-year sentence, with another 30 added for use of

> a gun, the burglar who enters a home unarmed is entitled to no more than a
> 10-year sentence-and by reason of the Sixth Amendment the facts bearing
> upon that entitlement must be found by a jury.

*Id.* at 308-09, 124 S. Ct. at 2540.

In this case, the sentencing court did not exceed the statutory maximum for

Petitioner's crimes. Therefore, the sentencing scheme did not run afoul of the Sixth

Amendment and the trial court's sentence did not violate Petitioner's constitutional rights.

*Chontos v. Berghuis*, 585 F.3d 1000, 1002 (6th Cir. 2009).

### F. Alleged Ineffective Assistance of Counsel

Finally, Petitioner alleges ineffective assistance of appellate counsel as cause to

excuse his procedural default. As discussed above, the Court determined that the interests

of judicial economy are best served by addressing the merits of Petitioner's defaulted

claims. Nevertheless, the Court will briefly address Petitioner's ineffective assistance of

appellate counsel claim.

The Supreme Court has held that a petitioner does not have a constitutional right to

have appellate counsel raise every non-frivolous issue on appeal. *Jones v. Barnes*, 463

U.S. 745, 754, 103 S. Ct. 3308 (1983). The Court further stated:

> For judges to second-guess reasonable professional judgments and impose
> on appointed counsel a duty to raise every "colorable" claim suggested by a
> client would disserve the . . . goal of vigorous and effective advocacy. . . .
> Nothing in the Constitution or our interpretation of that document requires
> such a standard.

*Id.* at 754, 103 S. Ct. at 3314. Strategic and tactical choices regarding which issues to

pursue on appeal are "properly left to the sound professional judgment of counsel."

*United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990).

Petitioner claims that appellate counsel was ineffective in failing to raise on direct review the claims Petitioner raised on collateral review and in his habeas petition. As addressed above, Petitioner fails to show that any of these claims have merit. Therefore, Petitioner cannot show that his appellate attorney was ineffective for failing to raise them on direct appeal.

## V.  Certificate of Appealability

Federal Rule of Appellate Procedure 22 provides that an appeal of a denial of a habeas corpus application may not proceed unless a certificate of appealability ("COA") is issued under 28 U.S.C. § 2253.  Fed. R. App. P. 22(b).  Rule 11 of the Rules Governing Section 2254 Proceedings now provides that a district court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."

A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. §2253(c)(2).  When a district court denies a habeas petition on the merits of the claims, a certificate may issue only if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.  *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S. Ct. 1595, 1604 (2000).  In this case, the Court concludes that reasonable jurists would not debate its assessment of Petitioner's claims.  Therefore, the Court will deny a certificate of appealability.

## VI.  Conclusion

For the foregoing reasons, the Court concludes that the grounds asserted by Petitioner in support of his request for habeas relief lack merit.  The Court further concludes that reasonable jurists would not debate whether the petition should have been resolved in a different manner.

Accordingly,

**IT IS ORDERED**, that the petition for a writ of habeas corpus is **DENIED**;

**IT IS FURTHER ORDERED**, that a certificate of appealability is **DENIED**.

DATE:December 8, 2010

s/PATRICK J. DUGGAN
UNITED STATES DISTRICT JUDGE

Copies to:
Marlin Devon Holland, #177944
Lakeland Correctional Facility
141 First St.
Coldwater, MI   49036

AAG Brian O. Neill